15 MAG 2168

ORIGINAL

Approved: _____
SAMSON ENZER and MAX NICHOLAS
Assistant United States Attorneys

Before:    HONORABLE DEBRA FREEMAN
           United States Magistrate Judge
           Southern District of New York



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - X
                                        :
UNITED STATES OF AMERICA                :
                                        :
          - v. -                        :  **SEALED COMPLAINT**
                                        :
LEOM KOLMNELA,                          :  15 Mag.
     a/k/a "Leo,"                       :
MERCEDES AMELIA PAEZ BROCHERO, and      :  Violation of
LEKE LLESHI,                            :  46 U.S.C. § 70506
     a/k/a "El Calbo,"                  :
                                        :  COUNTY OF OFFENSE:
                    Defendants.         :  New York
                                        :
- - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

     PETER J. STRAUSS, being duly sworn, deposes and states
that he is a Special Agent with the Drug Enforcement
Administration, and charges as follows:

## COUNT ONE
### (Conspiracy to Violate Maritime Drug Enforcement Laws)

     1.   From in or about February 2015 through on or
about June 19, 2015, in the Southern District of New York and
elsewhere, LEOM KOLMNELA, a/k/a "Leo," MERCEDES AMELIA PAEZ
BROCHERO, and LEKE LLESHI, a/k/a "El Calbo," the defendants, and
others known and unknown, intentionally and knowingly did
combine, conspire, confederate and agree together and with each
other to violate the maritime drug enforcement laws of the
United States.

     2.   It was a part and an object of the conspiracy
that LEOM KOLMNELA, a/k/a "Leo," MERCEDES AMELIA PAEZ BROCHERO,
and LEKE LLESHI, a/k/a "El Calbo," the defendants, and others

known and unknown, would and did manufacture and distribute, and possess with intent to manufacture and distribute, a controlled substance on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Section 70503(a)(1).

3.   The controlled substance that LEOM KOLMNELA, a/k/a "Leo," MERCEDES AMELIA PAEZ BROCHERO, and LEKE LLESHI, a/k/a "El Calbo," the defendants, conspired to manufacture and distribute, and possess with intent to manufacture and distribute, on board a vessel subject to the jurisdiction of the United States, was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, in violation of Title 46, United States Code, Section 70506 and Title 21, United States Code, Section 960(b)(1)(B).

(Title 46, United States Code, Section 70506(b).)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4.   I am a Special Agent with the Drug Enforcement Administration ("DEA"), and I am currently assigned to the agency's New York Field Division.  This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals.   Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Moreover, several of the statements reported below resulted from conversations that occurred in Spanish.  Such Spanish statements and conversations are reported, in substance and in part, in English below, except where otherwise indicated.

5.   I and other members of the DEA's New York Field Division have been working jointly with DEA's Miami Field Division, DEA's Cartagena Country Office in Colombia, and DEA's Canberra Country Office in Australia on a joint investigation of a drug trafficking organization that is believed to be transporting multi-kilogram shipments of cocaine and other drugs from locations in South America to Australia (among other places).  Based in part on the information set forth below, LEOM

2

KOLMENALA, a/k/a "Leo," the defendant, is believed to be a leading member of this drug organization.

6.     From my conversations with members of the DEA's New York, Miami and Cartagena offices about this investigation (including conversations with DEA agents who participated in debriefings of the two paid confidential sources designated below as "CS-1" and "CS-2"), my review of reports maintained by the DEA about this investigation, and my participation in physical surveillance and other aspects of this investigation, I have learned the following, in substance and in part:

a.     During the course of this investigation, the DEA has made use of a confidential source posing as an international drug trafficker ("CS-1"), and another confidential source posing as a boat captain in the business of transporting drug shipments ("CS-2") via a 60-foot rear-pilot-house vessel ("Vessel").[1]  CS-1 and CS-2 are both assisting the DEA in exchange for financial consideration, both have been paid informants for DEA since in or about 2013, and both have criminal histories that include convictions for narcotics trafficking.  Information provided by each of CS-1 and CS-2 in this and other investigations has proven reliable.  Moreover, information provided by each of CS-1 and CS-2 in this investigation has been corroborated by other independent evidence, some of which is discussed below.

b.     In or about February 2015, CS-1 participated in several telephone conversations with an individual — later identified as MERCEDES AMELIA PAEZ BROCHERO, the defendant — who was believed to be seeking to hire a marine vessel to transport a shipment of cocaine from Colombia to Australia. During these conversations, in substance and in part, BROCHERO arranged to meet in Aruba with CS-1 in order to inspect the Vessel.

---

[1]     Based on my conversations with members of DEA's Bogota and Miami offices, I have learned the following, in substance and in part.  The Vessel is owned by an associate of CS-1, was formerly registered to the United States, and has not been registered to any nation since in or about September 2014.  As such, I understand, based on my training and experience, that the Vessel is "a vessel without nationality" under Title 46, United States Code, Section 70502(c)(1)(A) and thus qualifies as a "vessel subject to the jurisdiction of the United States" under the maritime drug enforcement laws of the United States.

c.   On or about February 19, 2015, MERCEDES AMELIA
PAEZ BROCHERO, the defendant, met in Aruba with CS-1 (posing as
an international drug trafficker) and CS-2 (posing as the boat
captain of the Vessel).   During the meeting, the following took
place, in substance and in part.   BROCHERO inspected the Vessel
in the presence of CS-1 and CS-2.   CS-1 introduced CS-2 to
BROCHERO as the purported boat captain of the Vessel.   BROCHERO
said her boss "Leo" was based in the United States and wanted to
hire a marine vessel to transport a large shipment of cocaine
from Colombia to Australia.   BROCHERO used her cellphone to
place a telephone call to "Leo," had a brief conversation with
"Leo" in which BROCHERO said that the Vessel was suitable to
hire, and she then handed her cellphone to CS-1, who spoke
directly with "Leo."   During CS-1's conversation with "Leo,"
following a negotiation between them about the amount of the
transportation fee to hire the Vessel, "Leo" agreed, in
substance and in part, to a transportation fee of about $5,000
per kilogram of cocaine to be transported.   As detailed below,
BROCHERO's boss "Leo" was subsequently identified as LEOM
KOLMNELLA, a/k/a "Leo," the defendant.

d.   After that meeting, CS-1 participated in several
further conversations with MERCEDES AMELIA PAEZ BROCHERO, the
defendant, from in or about late February 2015 through in or
about early April 2015.   These conversations between CS-1 and
BROCHERO occurred via telephone communications, electronic
communications over a service known as "WhatsApp," and face-to-
face meetings in Colombia and Aruba.   During the course of these
conversations, the following took place, in substance and in
part.   BROCHERO discussed the timing of the expected shipment of
cocaine that she and her boss "Leo" had agreed to hire the
Vessel to transport, and she described "Leo."   For example,
BROCHERO said, in substance and in part, that her boss's name
was "Leom" and that he lives in Los Angeles, California in the
United States and owns an entertainment production company.
Based on my review of publicly available information, and
physical surveillance conducted by other DEA agents as part of
this investigation, I have learned that LEOM KOLMNELA, a/k/a
"Leo," the defendant, owns real estate in Los Angeles, has been
observed on multiple occasions in Los Angeles during physical
surveillance, and owns an entertainment production company.

e.   On or about April 8, 2015, CS-1 participated in a
conversation with MERCEDES AMELIA PAEZ BROCHERO, the defendant,
via electronic communications with CS-1 over "WhatsApp."   During
this conversation, BROCHERO stated, in substance and in part,
that the cocaine to be shipped via the Vessel would be delivered

at a location in Colombia the next morning (*i.e.*, on or about the morning of April 9, 2015).

f.   On or about April 9, 2015, a vehicle arrived at the agreed upon location in Colombia.   The vehicle was driven there by an individual later identified as LEKE LLESHI, a/k/a "El Calbo," the defendant, who was in the driver's seat of the vehicle, and the vehicle had several passengers, including MERCEDES AMELIA PAEZ BROCHERO, the defendant, and an individual who exited the vehicle with two suitcases ("FNU LNU-1").   FNU LNU-1 delivered the two suitcases to CS-1 at the agreed upon location in Colombia, and said, in substance and in part, that the delivery was being made on behalf of "Mercedes," which CS-1 understood to be a reference to BROCHERO.   Colombian law enforcement officials subsequently seized and searched the suitcases, which contained approximately 114 brick-shaped packages, each containing a white powdery substance that was later determined to be cocaine (based on testing of a sampling of several of the packages) weighing a total of about 114 kilograms.   Following the delivery of the cocaine to CS-1, CS-1 participated in a conversation with BROCHERO, via electronic communications over "WhatsApp."   During this conversation, CS-1 said, in substance and in part, that the cocaine had been received, and that CS-2 would commence the shipment of the cocaine from Colombia to Australia via the Vessel.   In reality, the cocaine was never loaded onto the Vessel, and the Vessel never left for Australia.

g.   During the period from on or about June 10, 2015 through on or about June 17, 2015, CS-1 participated in several conversations with MERCEDES AMELIA PAEZ BROCHERO, the defendant, via electronic communications over "WhatsApp."   During these conversations, the following took place, in substance and in part.   Based on the pretense that the Vessel was at sea, on its way to Australia with the cocaine shipment described above, CS-1 arranged to have BROCHERO set up a meeting in the Southern District of New York between CS-1 and BROCHERO's boss "Leo" — who has been identified as LEOM KOLMNELA, a/k/a "Leo," the defendant — in order to discuss payment of the transportation fee for the cocaine shipment.   More specifically, CS-1 said, in substance and in part, that CS-1 planned to be in New York City during the third week of June 2015, and asked BROCHERO to arrange a meeting in New York City between CS-1 and BROCHERO's boss (referring to KOLMNELA) to discuss their current business and future business.   BROCHERO confirmed that KOLMNELA would be available to meet with CS-1 in New York City.   CS-1 asked for KOLMNELA's cellphone number so that CS-1 could coordinate with

5

Case 1:15-cr-00685-ALC   Document 1   Filed 06/22/15   Page 6 of 8

KOLMNELA to meet in New York City, and in response, CS-1 provided a cellphone number with a New York City based area code for KOLMNELA (the "KOLMNELA Cellphone-1").

h.    On or about June 18, 2015, CS-1 met with LEOM KOLMNELA, a/k/a "Leo," the defendant, at a restaurant in New York, New York.[2]    Three other individuals were present during portions of the meeting.    I and other DEA agents conducted physical surveillance of the meeting with the aid of real-time GPS location data for the KOLMNELA Cellphone-1 obtained pursuant to a judicially authorized warrant, and the meeting was covertly recorded by CS-1 via a concealed audio recording device.    During the meeting, the following took place, in substance and in part:

i.    KOLMNELA introduced himself as "Leo."

ii.    KOLMNELA discussed the cocaine that KOLMNELA had agreed to pay CS-1 and CS-2 to ship via the Vessel from Colombia to Australia.    For example, KOLMNELA said that "El Calbo," which CS-1 understood as a reference to the individual identified as LEKE LLESHI, a/k/a "El Calbo," the defendant, had failed KOLMNELA, in that KOLMNELA had been hoping to ship over 300 kilograms via the Vessel to Australia, and LLESHI had only supplied about 114 kilograms for the shipment.

iii.    KOLMNELA discussed his drug trafficking business around the globe.    For example, CS-1 asked if KOLMNELA's business involved the trafficking of clothing impregnated with "perico," which is slang in Spanish for cocaine.    KOLMNELA acknowledged that he had done so in the past, but did not need to do so anymore because KOLMNELA expected to make future shipments using CS-1 and CS-2's shipment services via the Vessel.[3]    KOLMNELA also said he

---

[2]    Based on my review of GPS location data for the KOLMNELLA Cellphone-1 obtained pursuant to a judicially authorized warrant, I have learned, in substance and in part, that during the aforementioned meeting in New York, New York between CS-1 and LEOM KOLMNELLA, a/k/a "Leo," the defendant, the KOLMNELLA Cellphone-1 was in the vicinity of the location where the meeting occurred in New York, New York.

[3]    During the investigation to date in this case, there have been several seizures of clothing impregnated with cocaine through a chemical process, as a means of concealing the cocaine from law enforcement, that are believed to have been transported

liked to do business in Australia, where the market price of "la mercancia," which is also slang in Spanish for cocaine, is higher than in other countries.

    iv.  KOLMNELA discussed the payment of the transportation fee for the cocaine shipment referenced above. For example, CS-1 said that CS-1 needed to receive a substantial portion of the transportation fee before the Vessel arrived in Australia. KOLMNELA agreed to meet again with CS-1 in New York to provide a down payment of about $300,000 in cash towards the transportation fee.

    v.  During the meeting, KOLMNELA provided a new cellphone number ("KOLMNELA Cellphone-2") to the CS-1 so that CS-1 could arrange to meet again with KOLMNELA.

    i.  On or about June 19, 2015, CS-1 met with LEOM KOLMNELA, a/k/a "Leo," the defendant, at a hotel in New York, New York, after a telephone conversation with KOLMNELA on the KOLMENLA Cellphone-2. Two other individuals were present during portions of the meeting. I and other DEA agents conducted physical surveillance of the meeting, which was covertly recorded by CS-1 via a concealed audio recording device. During the meeting, the following took place, in substance and in part. With respect to the transportation fee that had been discussed previously by KOLMNELA and CS-1, KOLMNELA agreed to pay the fee by making several wire transfers of tens of thousands of dollars to CS-1, and to have his associates in Colombia provide thousands of dollars of cash (in pesos) in Colombia to CS-1. At the conclusion of this meeting, KOLMNELA was placed under arrest and transported to the DEA's New York Field Division for arrest booking and processing.

---

to various locations in Eastern Europe and Australia by members of KOLMNELA's drug organization as KOLMNELA's direction.

WHEREFORE, the deponent respectfully requests that LEOM KOLMNELA, a/k/a "Leo," the defendant, be imprisoned or bailed, as the case may be, and that warrants be issued for the arrest of MERCEDES AMELIA PAEZ BROCHERO and LEKE LLESHI, a/k/a "El Calbo," the defendants, and that both of them be imprisoned or bailed, as the case may be.

PETER J. STRAUSS
Special Agent
Drug Enforcement Administration


Sworn to before me this
22nd day of June, 2015

HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

8